IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Andre Jamal Coe, )
    Plaintiff, )
)
v. ) 1:10cv1382 (AJT/TCB)
)
Gene M. Johnson, et al., )
    Defendants. )

MEMORANDUM OPINION

This matter is before the Court on defendants' joint Motion for Summary Judgment on plaintiff's claim that his Eighth Amendment rights were violated when excessive force was applied during a cell extraction. For the reasons which follow, defendants' Motion will be granted, and summary final judgment will be entered in their favor. Plaintiff's outstanding motions to appoint counsel and for production of documents will be denied, as moot.

I. Procedural Background

Andre Jamal Coe, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, initially alleging that defendants used excessive force while extracting him from his cell at Sussex I State Prison ("Sussex I") on September 2, 2010, and that his ensuing efforts to receive medical attention for his injuries were thwarted to the extent that his rights under the Eighth Amendment were violated. By Order dated December 13, 2010, plaintiff was instructed concerning various deficiencies in the initial complaint, and was allowed an opportunity to particularize and amend his allegations. After plaintiff submitted an amended complaint on January 13, 2011, the claim of deliberate indifference to plaintiff's medical needs

1

was dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim. In addition, several defendants were dismissed from the action because it was apparent that they had been named solely on the basis of their supervisory positions. Service of the amended complaint was ordered on Lt. Dudley, Lt. Lane, Sgt. Ricks, Officer Moats, Officer Evans, and Officer Bland, the defendants named in connection with plaintiff's claim of excessive force.

On April 27, 2011, defendants Lt. Lane, Sgt. Ricks, Officer Moats, Officer Evans, and Officer Bland filed a Motion for Summary Judgment and supporting memorandum of law, arguing that plaintiff's claim could not be entertained as he failed to exhaust his administrative remedies prior to bringing this federal action.[1] Plaintiff was provided with notice as required by Local Rule 7(k) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) that he could file responsive materials within twenty (20) days, and plaintiff filed a response on May 17, 2011. By Memorandum Opinion and Order dated February 10, 2012, the motion was denied, and defendants were allowed thirty (30) days within which to file a renewed Motion for Summary Judgment on the merits of plaintiff's excessive force claim.

Defendants filed their renewed Motion for Summary Judgment as directed, along with a supporting Memorandum and exhibits. Dkt. 35 - 36. Plaintiff again received the appropriate Roseboro notice, and he subsequently filed a Brief in Opposition to defendants' summary

---

[1] The Waiver of Service of Summons sent to Lt. Dudley was returned to the Court by the Office of the Attorney General, along with a letter advising that Lt. Dudley is no longer employed by the Virginia Department of Corrections. Dkt 16. Pursuant to the request by the Court, the Attorney General subsequently provided Lt. Dudley's last known forwarding address under seal. Dkt. 25. However, since the facts underlying plaintiff's claim against Dudley are identical to those pertaining to the defendants in whose favor summary judgment is being entered, further efforts to serve Dudley would be futile, and he accordingly will be dismissed as a party to this action pursuant to Fed. R. Civ. P. 4(m).

2

judgment request. Dkt. 38.

## II. Factual Background

The following material facts are uncontested. On September 2, 2010, plaintiff jammed his cell's food tray slot with his mattress.[2] When attempts to have plaintiff remove the mattress failed, plaintiff's behavior was deemed disruptive, Compl. at handwritten ¶ 20, and a cell extraction team consisting of the defendants was authorized to remove plaintiff from his cell. At about 3:20 p.m., the cell extraction was performed. Officer Moats operated the shield, Officer Evans was responsible for securing plaintiff's right leg, Officer Bland was responsible for securing the left leg, Sgt. Ricks was responsible for plaintiff's right arm, and Lt. Lane operated the camera. When the cell extraction team entered the cell, plaintiff "was acting very aggressive towards Sgt. Ricks and other members of the extraction team." Ricks Aff. ¶ 4. Officer Bland, the last member of the team to enter the cell, observed as he did so that plaintiff was "fighting with other members of the cell extraction team." Bland Aff. ¶ 4. The extraction team secured plaintiff and placed him in wrist and ankle restraints. Evans Aff. ¶ 4; Ricks Aff. ¶ 4' Bland Aff. ¶ 4; Soloria Aff. ¶ 4. Lt. Lane, the camera operator, "did not witness any member of the cell extraction team assault Coe in any way as he alleges." Lane Aff ¶ 4.

Once Coe was secured he was placed in the pod shower to be assessed by the nurse.

---

[2] In the complaint, plaintiff alleges that he complained of "severe stomach issues" caused by his inability to access his medication "that aided in defecation" during his placement in Sussex I's segregation unit. According to plaintiff, Lt. Lane came to plaintiff's cell and wrote down the names of the medications that were stored with plaintiff's property, but when "hours passed" without being provided with his medication, plaintiff decided to jam his tray slot until he received medical attention. Compl. ¶¶ 18 - 19. In his affidavit, Lt. Lane states that the only interaction he had with plaintiff on the day in question was his participation in the cell extraction. Lane Aff. ¶ 4.

3

Ricks Aff. ¶ 4. He was then taken to the medical department to be further assessed by medical staff. Evans Aff. ¶ 4. That examination revealed that plaintiff had a laceration on the back of his left ear, a hematoma to the back of his right ear, a laceration to his right scalp, a hematoma to his left forehead, and an abrasion on his upper back. Soloria Aff. ¶4, Ex.A. Plaintiff also complained of pain to his right wrist "during range of motion," and scrapes were noted to three fingers on his right hand. Id. The restraints were checked and were determined to have two finger space to allow bilateral movement and movement of the extremities. Id.

In response to defendants' summary judgment motion, plaintiff filed a Brief in Opposition under penalty of perjury.[3] Plaintiff states without additional detail that he "was punched in his face repeatedly after already being restrained." Plf. Brief at 2. When plaintiff was placed in the shower for medical evaluation, he was unconscious. Id. He further asserts that, contrary to Nurse Soloria's affidavit, "there was no laceration of any kind on plaintiff's left ear," although there was "blood coming from inside of the left ear ... that failed to be recorded." Id. Plaintiff states that "hours after being released from" the four-point restraints he filed an emergency grievance seeking treatment for his injuries, and was issued an ace bandage for his foot, ice for swelling, and Motrin for pain. Id.

---

[3]As a general rule, the non-moving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the non-moving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994). Here, however, as will be seen, even if the substance of plaintiff's Brief in Opposition is considered, defendants are entitled to the summary judgment they seek.

Plaintiff in his Brief of Opposition also refers the Court's attention to exhibits he submitted in support of the initial complaint, in the form of statements by four fellow inmates. However, none of the inmate statements is notarized or signed under penalty of perjury. Those of inmates Ross and Pride each contains a statement to the effect that the information provided is true, Compl., Ex. A, D; those of Dougherty and Orgon set out no attempts to certify the accuracy of the information provided. Compl., Ex. B, C. Under such circumstances, the inmates' statements are insufficient to oppose a motion for summary judgment, as they are unsworn and do not subject the authors to the penalty of perjury for any misstatements. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion); Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury). Accordingly, the unsworn statements of the four inmates attached to the complaint cannot be considered here.

### III. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at

322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

## IV. Analysis

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and ... the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). To satisfy the objective component, the plaintiff must demonstrate that the "nature" or amount of force employed "was nontrivial."

Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010). The subjective component turns on whether the inmate can demonstrate "'wantonness in the infliction of pain.'" Iko, 535 F.3d at 239 (quoting Whitley, 475 U.S. at 322). As to the subjective component, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident." Hudson, 503 U.S. at 9. The extent of injury suffered by the inmate is relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force could plausibly have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of force applied. Wilkins, 130 S.Ct. at 1178. (rejecting the notion that an excessive force claim involving only *de minimis* injury is subject to automatic dismissal). Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts." Id. at 1178-79.

A. Objective Component

Satisfaction of the objective component in a successful Eighth Amendment claim is less demanding relative to the subjective component. Williams, 77 F.3d at 761. Here, that component is met. Defendants' exhibits reflect that during the incident in question, plaintiff suffered lacerations to the back of his left ear and his scalp, hematomas to the back of his right ear and left forehead, an abrasion on upper back, and scraped fingers. Soloria Aff. ¶4, Ex.A. In his complaint and again in his Brief of Opposition, plaintiff states that he also suffered an injury to his foot, for which he was given an ace bandage. In the amended complaint, plaintiff adds that

his right wrist was "swollen, bleeding and discolored" because the handcuff was closed on his skin. Am. Compl. at 2. These injuries, taken in the light more favorable to the plaintiff, cannot be said to have been trivial. Cf. Wilkins, 130 S.Ct. at 1179. Accordingly, the Court finds that the deprivation suffered by plaintiff in this case was sufficiently serious to warrant constitutional protection.

B. Subjective Component

However, plaintiff's claim founders on the subjective component. The facts pertaining to the "core judicial inquiry" here are uncontroverted: defendants undertook to extract plaintiff from his cell in "a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 7. Indeed, plaintiff himself states in the complaint that his behavior was deemed "disruptive" after he jammed his mattress in his food slot and refused officers' commands to remove it. Compl. at handwritten ¶ 20; Am. Compl. at 3. Therefore, the fact that defendants undertook to extract plaintiff from his cell does not offend contemporary standards of decency.

Moreover, at this juncture no genuine issue of material fact exists as to whether the extraction team applied force "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 9. "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." Cherry v. Sherin, 2012 WL 664203 (E.D. Va. Feb. 28, 2012), quoting Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994). The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with wantonness." Iko, 535 F.3d at 239 (internal quotation marks omitted). These include: (1) the need for the application of force; (2) the relationship between the need and the amount of force

that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. Additionally, although not dispositive, the extent of injury suffered by the inmate is relevant to the subjective inquiry, as it "may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Wilkins, 130 S.Ct. at 1178.

Here, consideration of these factors leads to the conclusion that defendants did not maliciously and sadistically use force to cause plaintiff harm. Defendants attest that when they entered plaintiff's cell, he was "fighting" them and "acting very aggressive towards" them. Bland Aff. ¶ 4; Ricks Aff. ¶ 4. Plaintiff offers no rebuttal to these statements in his Brief in Opposition. Therefore, defendants clearly found themselves in a situation where a legitimate need for the application of force was present. Nor does any inference arise that defendants applied force that was so excessive in relation to the situation they faced that the Eighth Amendment was violated. All of the defendants attest that they did not assault plaintiff during the cell extraction. Moats Aff. ¶ 5; Evans Aff. ¶ 5; Ricks Aff. ¶ 5; Bland Aff. ¶ 5; Lane Aff. ¶ 4. The sole evidence that would mitigate against such a conclusion is plaintiff's statement in his Brief in Opposition that defendants repeatedly punched him in the face after he was already restrained, since by then any reasonably perceived threat that the application of force was intended to quell arguably was ended. Here, however, consideration of the nature and extent of the injuries plaintiff suffered is relevant, as only a single documented injury occurred to plaintiff's face, a hematoma to his left forehead. Soloria Aff. ¶4, Ex.A. Nothing in any of the materials on file with the Court suggests that any defendant acted with a malicious motive in restraining the plaintiff. Cf. Orem v. Rephann, 523 F.3d 442, 447 (4th Cir. 2008) (observing that

comments or actions by a defendant which indicate a malicious motive are relevant to the subjective inquiry in an Eighth Amendment claim).

Courts are mindful that "[t]he infliction of pain in the course of a prison security measure ... does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes or was unreasonable, and hence unnecessary in the strict sense." Cherry, 2012 WL 664203 at *5, quoting Whitley, 475 U.S. at 319. In this case, the evidence as a whole does not support a reasonable inference that defendants' motives in applying force to plaintiff were wanton or malicious. Therefore, plaintiff has failed to carry his burden to show that the subjective component of a viable Eighth Amendment claim was present.

In a case which appears to be strikingly on point with the instant action, the administrator for the estate of a deceased detainee sued law enforcement officials for, *inter alia*, using excessive force to extract the decedent, Gerald Collins, from his cell. Collins was acting "belligerently" and sticking his arm through the food slot of his cell door, and when officers ordered him to get his hand back in his cell he refused. See Grayson v. Reed, 195 F.3d 692, 694 (4th Cir. 1999), cert. denied sub nom. Grayson v. Royer, 529 U.S. 1067 (2000). In an effort to distract Collins, officers opened his cell door slightly, and Collins jammed his foot into the doorway. The decision was made to extract Collins from the cell, and a five-man cell extraction team entered the cell and pinned Collins face down. During the ensuing struggle Collins was punched seven to nine times, and once he was restrained, the officers carried him face-down to an adjoining cell. Collins continued to struggle, and was placed in four-point restraints. Shortly thereafter, Collins became unconscious, and later stopped breathing. He was transported to a

hospital, where he died the following day.[4] Id. Defendants' motion for summary judgment on the estate's claim that excessive force was used in extracting Collins from his cell was granted by Judge Albert V. Bryan, Jr. of the District Court for the Eastern District of Virginia, and plaintiff appealed. The Fourth Circuit Court of Appeals upheld that result, finding that the officers applied force "in a good faith effort to maintain or restore discipline." Grayson, 195 F.3d at 696. The appellate court noted:

> In dealing with such agitated detainees prison officials must not be forced to walk a tightrope and face the prospect of a lawsuit no matter which way they turn. See Gooden v. Howard County, 954 F.2d 960, 967 (4th Cir. 1992)(en banc). If officers attempt to restrain a detainee such as Collins, they risk an excessive force claim. On the other hand, if they fail to restrain such a detainee they could be subject to another lawsuit brought by other detainees or even the obstreperous detainee himself. See Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[P]rison officials can be held liable for failing to protect one prisoner from harm caused by other prisoners); Lee v. Downs, 641 F.2d 1117, 1121 (4th Cir. 1981) ("[P]rison officials have a duty to protect prisoners from self-destruction or self-injury."). Here the officers obviously felt the need to subdue Collins, either to calm the general environment or to prevent Collins from hurting himself. If we failed to accord due deference to the officers' efforts, we would give encouragement to insubordination in an environment which is already volatile enough.

Grayson, 195 F.3d at 676 - 97.

The Court finds the foregoing observation equally applicable to the instant case. Considering the totality of the circumstances in the light more favorable to the plaintiff, he has failed to demonstrate a genuine issue of material fact as to whether defendants' actions in dealing with his disruptive behavior were sufficiently egregious to violate the Eighth Amendment. That

---

[4] Collins' death was due to an enlarged heart and PCP intoxication. Grayson, 195 F.3d at 698.

being so, entry of summary judgment for defendants is appropriate.

## V. Conclusion

For the foregoing reasons, the Motion for Summary Judgment of defendants Lt. Lane, Sgt. Ricks, Officer Moats, Officer Evans, and Officer Bland will be granted, and summary final judgment will be entered in their favor. Defendant Lt. Dudley will be dismissed as a party to the action pursuant to Fed. R. Civ. P. 4(m). Plaintiff's outstanding motions to appoint counsel and for production of documents will be denied, as moot. An appropriate Order shall issue.

Entered this 13th day of February 2013.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge